IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MARCIA SLACK | § | |
| *Plaintiff,* | § § § | |
| V. | § | CIVIL ACTION NO. 6:14-CV-576 |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA | § § § § § | |
| *Defendant.* | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Judgment on the Pleadings (Doc. No. 29). Plaintiff filed a Response (Doc. No. 45); Defendant filed a Reply (Doc. No. 48); and Plaintiff filed a Surreply (Doc. No. 53). Having fully considered the parties' arguments and for the reasons set forth herein, Defendant's Motion for Judgment on the Pleadings is **DENIED**.

## BACKGROUND

On May 27, 2014, Plaintiff Marcia Slack filed a complaint against Defendant, The Prudential Insurance Company of America, in the District Court of Smith County, Texas alleging (1) violations of the Deceptive Trade Practices Act (DTPA), (2) violations of the Texas Insurance Code, (3) negligence, (4) negligent misrepresentation, (5) gross negligence, and (6) fraud. *See* Doc. No. 1-1. On June 23, 2014, Defendant filed a Notice of Removal, removing the case to the United States District Court for the Eastern District of Texas, Tyler Division. Doc. No. 1. Defendant filed an answer generally denying Plaintiff's allegations and asserting affirmative defenses to Plaintiff's causes of action. Doc. No. 5. Plaintiff subsequently filed her

First Amended Original Complaint on December 19, 2014. Doc. No. 15. Defendant filed an answer to Plaintiff's amended complaint on February 18, 2015. Doc. No. 23. Plaintiff then filed a Motion for Leave to File Second Amended Original Complaint on July 27, 2015, which the Court granted on September 15, 2015. Doc. Nos. 104 & 141. On March 5, 2015, Defendant filed Motion for Judgment on the Pleadings, arguing that Plaintiff does not have standing to bring her claims. Doc. No. 29. In light of the Court's granting of Plaintiff's Second Amended Original Complaint, that document will serve as the live complaint upon which the Court will decide Defendant's Motion for Judgment on the Pleadings.

Plaintiff's husband, Tom Slack, purchased a life insurance policy (the Policy) from Defendant in 2001. Doc. Nos. 29 at 2 & 105 at 2. Mr. Slack named Plaintiff as the beneficiary of the Policy. Doc. No. 105 at 2. After Mr. Slack died on December 2, 2012, Plaintiff filed a claim for death benefits under the Policy, and Defendant paid Plaintiff $274,391.56. Doc. Nos. 5 at 5, 29 at 1, & 105 at 9–10 (Plaintiff's Second Amended Original Complaint).

Plaintiff contends that after purchase of the Policy, Defendant represented to Plaintiff and Mr. Slack (the Slacks) that Ronnie William Shaffer was the "representative with whom they should and could communicate regarding the Policy, including any questions concerning payment of premiums." Doc. Nos. 105 at 4 & 105-1. Plaintiff contends that the Slacks used community funds to pay the annual premium payment of $10,580.00 plus an additional payment of $6,720.00 from 2001 to 2010 because Defendant represented to them that if they made the additional payment, the premium due under the Policy would vanish after ten years. Doc. No. 105 at 2–3.

Plaintiff states that in 2011, Mr. Slack received a notice from Defendant stating that his annual premium was due, which was contrary to Defendant's original representation of vanishing premiums. *Id.* at 3. Plaintiff asserts, however, that the notice also stated that Mr. Slack's policy had a "cash value of the Additional Paid-up Insurance [of] $108,984.93 and that the Policy had a total cash value of $164,134.93." *Id.*at 4. Plaintiff states that Mr. Slack then contacted Shaffer to request the premium be paid from a portion of the Policy, and Shaffer called Defendant to approve the payment method; Defendant approved the payment and told Mr. Slack he could set the payment to be automatically paid from the Policy values 45 days after the premium due date if Mr. Slack did not make the premium payments within 31 days of the due dates. *Id.*at 6. Plaintiff states that Mr. Slack completed the necessary paperwork on July 18, 2011. *Id.* at 5. Plaintiff also contends that the Slacks relied on Defendant's representations that the payments could be taken directly from the Policy values instead of paid out of pocket on an annual basis. *Id.* at 6. Defendant, in its answer, stated that Shaffer did contact Defendant and spoke with "Justin," but denies that Defendant stated that the 2012 premium would be automatically paid from the Policy values. Doc. No. 5 at 3.

According to Plaintiff's Second Amended Original Complaint, following an initial refusal to pay the 2011 premium from the cash value of the additional paid up insurance, Defendant sent Mr. Slack written notice of the approval of the payment. Doc. No. 105 at 5. Plaintiff asserts that in June of 2012, Mr. Slack requested an accounting of the Policy values to determine if they were sufficient to satisfy the 2012 premium, and the document he received showed that he had a "cash value of paid up additional insurance" of $100,304.07 and a "total net cash surrender value" of $163,370.77 *Id.* at 7 & Doc. No. 105-3. Plaintiff states that Mr.

Slack then received a notice of payment due dated July 19, 2012, stating that he was to pay $17,300.00 for his 2012 annual premium, but that the Slacks took no action because Defendant previously represented that the premium would automatically be paid 45 days after the payment was due if the Slacks did not make the payment within 31 days after the due date. Doc. No. 105 at 6.

Further, Plaintiff claims that Mr. Slack contacted Defendant on September 2, 2012, to ensure that the 2012 premium would be paid in the same way as the 2011 premium; Plaintiff states that during that conversation, Defendant represented that the 2012 premium would, in fact, be automatically paid from the Policy values. *Id.* at 8. However, Defendant sent Mr. Slack a letter dated September 20, 2012, stating that his policy lapsed due to nonpayment. *Id.* Plaintiff asserts that Mr. Slack then contacted Shaffer, who in turn contacted Defendant and determined that the Policy lapse was a mistake and that the Policy would be reinstated. *Id.* at 9. Plaintiff then asserts that Mr. Slack received a letter from Defendant on November 8, 2012, stating that if he wished to reinstate the Policy, he was required to pay $17,300. *Id.* & Doc. No. 105-5.

When Mr. Slack died and Plaintiff filed a claim for death benefits under the Policy, Defendant paid Plaintiff $274,391.56. Doc. No. 105 at 9–10. Plaintiff asserts that Defendant researched the reasoning for the issuance of less than $500,000 for over a year and then "advised Plaintiff that Defendant, without any authorization from the Slacks and over the objections of Defendant's designated agent, Shaffer, had unilaterally used the over $160,000.00 in cash value of this Policy account and almost $200,000 in premiums paid by the Slacks since 2001 to purchase what Defendant characterized as 'Reduced Paid-up Insurance' with a death benefit of $270,000.00." *Id.* at 12.

## **LEGAL STANDARD**

A party may file a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "after the pleadings are closed but within such time as not to delay the trial." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–313 (5th Cir. 2002). A Rule 12(c) motion is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Id.* (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990)).

To evaluate a judgment on the pleadings, the Court uses the same standard as a Rule 12(b)(6) motion to dismiss. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). The Court may not look beyond the pleadings to decide the motion. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Further, the complaint is construed liberally in favor of the plaintiff, and all well pleaded facts are taken as true. *Kocurek v. Cuna Mut. Ins. Soc.*, 459 F. App'x. 371, 373 (5th Cir. 2012); *Baker*, 75 F.3d at 196. The Court should grant a judgment on the pleadings if "in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states a valid claim for relief." *Kocurek*, 459 F. App'x. at 373. A "judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain." *Brittan Communications Intern. Corp. v. Southwestern Bell Telephone Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

**DISCUSSION**

**A. Standing under the DTPA**

Defendant urges the Court to decide that Plaintiff does not have standing under the DTPA because as the designated beneficiary, Plaintiff is not a "consumer" as defined by Section 17.45(4). Doc. No. 29 at 4–5. Defendant cites *Kocurek v. Cuna Mutual Insurance Society* in support of its Motion, contending that here—like in *Kocurek*—Plaintiff's claim should be dismissed because the spouse-beneficiary of a decedent's life insurance policy is not considered a consumer under the DTPA. Doc. No. 29 at 5, citing *Kocurek*, 459 F. App'x at 374. Additionally, in its Motion, Defendant states that the Southern District of Texas has ruled that the beneficiary of a homeowner's insurance policy was not a consumer under the DTPA because she was not a party to the contract, and Defendant urges the Court to apply the same rule to the facts of this case. *Metro. Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001). Defendant further asserts that because (1) Plaintiff was not involved with the "Policy until *after* the alleged wrongdoing occurred," (2) she does not explain her reliance on Defendant's representations, and (3) her "only relation to the insurance policy is to seek policy proceeds," she is not a consumer. Doc. No. 48 at 2 (emphasis in original). Defendant argues that Plaintiff "alleged that all representations were made to Mr. Slack, and she failed to allege that she – as opposed to Mr. Slack – acted in reliance on them."[1] *Id.*

Plaintiff argues that she is entitled to consumer status as the intended third party beneficiary of the life insurance policy. Doc. No. 45 at 4 (citing *Wellborn v. Sears, Roebuck & Co.*, 970 S.W.2d 1420 (5th Cir. 1992); *Bohls v. Oakes*, 75 S.W.3d 473 (Tex. App.—San Antonio

---

[1] Within its Motion, Defendant's arguments are based on Plaintiff's First Amended Original Complaint. However, as stated above, the Court will look only to the live complaint for purposes of this Motion (Plaintiff's Second Amended Original Complaint, Doc. No. 105).

2002, pet. denied); *Kersh v. United Healthcare Ins. Co.*, 946 F. Supp. 2d 621 (W.D. Tex. 2013); *Bynum v. Prudential Residential Services, LP*, 129 S.W.3d 781 (Tex. App.—Houston [1st District] 2004, pet. denied)). Additionally, Plaintiff asserts that because "the Slacks" paid the Policy premiums from community funds, Plaintiff is a consumer under the DTPA. Doc. No. 45 at 4 (citing *Kocurek*, 459 F. App'x at 374). In support of her argument, Plaintiff cites caselaw stating that one's "standing as a consumer is established by the plaintiff's relationship to the transaction and not their contractual relationship with the defendant." Doc. No. 53 at 2–3 (citing *Wellborn*, 970 F.2d at 1426; *Kersh*, 946 F. Supp. 2d at 643; *Bohls*, 75 S.W.3d at 479).

To obtain consumer status under the DTPA, a person must seek or acquire goods or services by purchase or lease. TEX. BUS. & COMM. CODE ANN. § 17.45(4) (West 2007). The Texas Supreme Court has provided courts with guidance, stating "we must give the [DTPA], under the rule of liberal construction, its most comprehensive application possible without doing any violence to its terms." *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex. 1985) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539–40 (Tex. 1981)). It is well settled that there is no requirement of privity between a plaintiff and a defendant in order for a plaintiff to assume consumer status. *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983). Instead, the only additional requirement is "that the goods or services sought or acquired by the consumer form the basis of [the plaintiff's] complaint." *Id.* For instance, in *Kennedy*, the court held that an employee whose employer purchased an insurance policy on his behalf was a consumer under the DTPA because, although he "did not 'seek' the benefits . . . he most assuredly did 'acquire' those benefits when he was covered by the policy provisions." *Kennedy*, 689 S.W.2d at 892. *See also Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368

(Tex. 1987) (holding that an infant hospital patient was a consumer under the DTPA—although the patient did not contract for the services she received, she 'acquired' the services nonetheless). The court stated that the consumer herself does not necessarily have to be the one who purchases or leases the goods or services at issue; instead, a purchase by another person for a third party's benefit can satisfy the requirements under the DTPA of consumer status. *Kennedy*, 689 S.W.2d at 892. As such, Plaintiff correctly points out that whether she is a consumer under the DTPA is determined by her "relationship to the transaction, not by a contractual relationship with [Defendant]." *Wellborn*, 970 F.2d at 1426; *Kersh*, 946 F. Supp. 2d at 643; *Bohls*, 75 S.W.3d at 479.

With respect to Defendant's argument that Plaintiff was not involved with the Policy until after the alleged wrongdoing occurred, the Texas Supreme Court has held that "there is no requirement that the defendant's unconscionable act occur simultaneously with the sale or lease of the goods or services that form the basis of the consumer's complaint. If, in the context of a transaction, . . . any person engages in an unconscionable course of action which adversely affects a consumer, that person is subject to liability under the DTPA." *Flenniken*, 661 S.W.2d at 707 (internal citations omitted). Similarly, the Court declines to impose a temporal prerequisite upon a consumer who is alleging another's wrongdoing under the DTPA.

This case is distinguishable from *Kocurek*. In that case, the court stated that because "Kocurek's husband, and not Kocurek, actually purchased the policies, Kocurek [did] not qualify as a consumer under the statute" but recognized that Kocurek argued for consumer status "by virtue of her community property interest in the policies which were paid for with community funds. However, Kocurek failed to raise [that] argument in a timely manner in the district court."

8

*Kocurek*, 459 F. App'x at 374. Here, Plaintiff has raised the argument that community funds paid for Mr. Slack's policy premiums in a timely manner because she makes such contentions in her Second Amended Original Complaint, which the Court granted leave for her to file. Doc. No. 105 at 3, 12. When Plaintiff's assertion that community funds paid for the policy premiums is taken as true, her pleadings support that she is a consumer under the DTPA.

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings with regard to Plaintiff's DTPA claim.

### B. Standing under the Insurance Code

Defendant, in its Motion, argues that Plaintiff does not have standing to assert a claim under the Texas Insurance Code because she is merely a third party to the Policy. Doc. No. 29 at 7. Defendant also contends that "claims under the Texas Insurance Code do not survive following the insured's death." *Id.* at 8 (citing *Launius v. Allstate Ins. Co.*, No. 3:06-CV-0579-B, 2007 WL 1135347, at *6 (N.D. Tex. Apr. 17, 2007)). Defendant attempts to bolster its argument by stating that (1) Plaintiff does not assert that any of Defendant's representations reached Plaintiff (and instead were only made to Mr. Slack), (2) Plaintiff only asserts that Mr. Slack paid the Policy premiums, (3) Plaintiff was not designated as the beneficiary until after Mr. Slack took out the Policy, and (4) Plaintiff did not allege any reliance on Defendant's representations.[2] Doc. Nos. 29 at 8 & 48 at 3.

In response, Plaintiff argues that one does not have to be a consumer under the DTPA to bring a claim under the Texas Insurance Code. Doc. No. 45 at 5 (citing *Kocurek*, 459 F. App'x at 374). Plaintiff references a Texas Supreme Court holding that "'any person' injured by another's deceptive acts or practices in the business of insurance has a cause of action and the statute

---

[2] *See supra* note 1.

9

defines 'person' broadly to include 'any individual.'" *Id.* at 6 (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000)). Plaintiff adds weight to her argument by distinguishing her case from *Allstate Ins. Co. v. Watson*, asserting that her objectives align with her late husband's objectives. *Id.* Finally, Plaintiff argues that as the intended beneficiary under the Policy, she has standing under the Insurance Code even if she does not have standing under the DTPA because she is a "person" as defined by Section 541.002(2) of the Texas Insurance Code. *Id.* at 6–7.

The Court notes critical distinctions between the facts of this case and those cited by Defendant. For instance, in *Allstate Ins. Co. v. Watson*, a 1994 Texas Supreme Court case holding that a third-party claimant does not have standing under the Insurance Code, the court dealt with conflicting interests between the insured and the third-party claimant. In its holding, the court stated "were we to extend to third party claimants the same duties insurers owe to their insureds, insurers would be faced with owing coextensive and conflicting duties." *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 150 (Tex. 1994). The court fortified its holding by pointing out that the third party had not paid any premiums on the policy and had "no legal relationship to the insurer or special relationship of trust with the insurer." *Id.* at 149. Here however, there is no indication that Plaintiff's interests conflict with what Mr. Slack's interests were when he named Plaintiff as the beneficiary of the Policy. Plaintiff also asserts that "the Slacks" paid the Policy premiums, which is distinct from the facts of *Watson* and gives Plaintiff a more stable basis for standing.

Under Fifth Circuit jurisprudence, there is no requirement that a Plaintiff be a consumer to bring a claim under the Texas Insurance Code. *Kocurek*, 459 F. App'x at 374. Instead, any "person" who suffers an injury during her course of dealing with someone in the practice of

insurance has standing under the Insurance Code. *Casteel*, 22 S.W.3d at 383. In *Casteel*, the court pointed out that a "person is defined broadly as '*any individual*, corporation, association, partnership, . . . and any other legal entity engaged in the business of insurance, *including agents*, brokers, adjusters and life insurance counselors." *Id.* (emphasis in original). Plaintiff—as an individual—clearly fits into the category of a person.

Further, a person has standing under the Insurance Code if she is an intended third-party beneficiary under an insurance policy. *Kersh*, 946 F. Supp. 2d at 642. *Casteel* distinguished its holding from *Watson* by explaining that among an insurer's duties are "defend[ing] its insured *against* the claims asserted by a third party. But the claimant in *Watson* asked [it] to extend [those] same duties to a party adverse to the insured." *Casteel*, 22 S.W.3d at 384 (emphasis in original). The court held that, unlike in *Watson*, the claimant in *Casteel* was not in conflict with the insured because "the duty owed by the insurer to the insured [was] in harmony with the duty owed to the [claimant]." *Id.* Similarly, the logic applied in *Watson* does not apply to Plaintiff's claims because her interests directly align with Mr. Slack's.

Defendant's argument that Plaintiff's claim under the Insurance Code is futile is unpersuasive. In *Launius*, the court ruled that a homeowner's claim under his insurance policy did not survive his death. *Launius*, 2007 WL 1135347, at *6. However, the court's logic does not apply to Plaintiff's claim under Mr. Slack's life insurance policy. Life insurance claims necessarily survive the death of the insured because only then can beneficiary receive the benefits of the policy. Further, in Plaintiff's Second Amended Original Complaint, she asserts that Defendant made representations to the Slacks and that the Slacks relied on those

representations. Plaintiff also asserts that the Slacks paid the Policy premiums from community funds. Those assertions are sufficient to support Plaintiff's standing under the Insurance Code.

As such, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings with regard to Plaintiff's claim under the Texas Insurance Code.

### C. Plaintiff's common law tort claims

Plaintiff's Second Amended Original Complaint appears to allege new facts that—when taken as true—would support her common law causes of action. Because the Court allowed Plaintiff to file her Second Amended Original Complaint, the Court will take up the sufficiency of Plaintiff's common law claims when the Court considers Defendant's Motion for Summary Judgment. Doc. Nos. 123 & 141.

Therefore, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings with respect to Plaintiff's claims of negligence, negligent misrepresentation, gross negligence, and fraud. The motion as to these claims is denied without prejudice, and Defendant may re-urge the Court to dismiss those claims in its supplemental pleading.

## **CONCLUSION**

For all the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **DENIED** with respect to Plaintiff's claims of (1) violations of the DTPA, (2) violations of the Texas Insurance Code, and **DENIED** without prejudice as to (3) negligence, (4) negligent misrepresentation, (5) gross negligence, and (6) fraud.

**So ORDERED and SIGNED this 22nd day of September, 2015.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE